

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 24, 2014

**BY ELECTRONIC MAIL**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

     Re:   *United States* v. *Luis Arteaga, Jr.*,
             **S10 12 Cr. 859 (VM)**

Dear Judge Marrero:

     The Government writes to set forth its objection to defendant Luis Arteaga, Jr.'s request for his sentencing hearing to be adjourned "until the [Smarter Sentencing Act] is enacted into law or rejected by Congress." Arteaga is presently scheduled to be sentenced this coming Friday, February 28, 2014, at 4:00 p.m. This Court should sentence Arteaga as scheduled.

     On October 9, 2013, Arteaga pled guilty, pursuant to a plea agreement, to Count One of Indictment S10 12 Cr. 859 (VM), charging him with conspiracy to distribute cocaine in violation of Title 18, United States Code, Section 846. Though Count One charged a conspiracy to distribute five or more kilograms of cocaine, under the terms of the plea agreement, the Government accepted a plea from Arteaga to the lesser included offense of conspiracy to distribute 500 grams or more of cocaine. Based on an applicable Guidelines offense level of 29 and a Criminal History Category of II, the parties stipulated to an applicable Guidelines range of 97 to 121 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment.

     Arteaga now seeks an adjournment of his sentencing proceeding for an indeterminate amount of time, in the hope that he will benefit from a proposed bill presently pending in the Senate: the so-called "Smarter Sentencing Act" (the "SSA"). This is not a legitimate reason to adjourn sentencing, and the Government opposes such an adjournment.

     First, Arteaga offers no substantive reason to adjourn his sentence. This is not a case where, for example, a defendant who is cooperating has not completed his cooperation, or a party has been delayed in obtaining files relevant to sentencing, or the parties or the Court have a scheduling issue. Rather, the defendant is simply hoping that a potential change in the law will reduce his applicable Guidelines range and/or statutory sentencing range. *See United States* v. *Olivares*, No. 05 Cr. 6094 (SHS), 2006 WL 2057188, at *4 (S.D.N.Y. July 24, 2008) (Stein, J.) ("Olivares has cited no law establishing a defendant's right to have his sentencing adjourned on

the chance that an intervening change in the law might work to his benefit."); *Coker* v. *United States*, Nos. 01 Civ. 5045 (SWK), 91 Cr. 685 (SWK), 2003 WL 1563374, at *1 (S.D.N.Y. Mar. 25, 2003) (noting, in reviewing a case's procedural history, that "[t]he Court declined Coker's request for an adjournment so that he could take advantage of a pending reduction in the sentencing guidelines regarding drug quantity."); *see also*, *United States* v. *McAllister*, No. 10-4387, 2010 WL 4561395, at 1 n.* (4th Cir. Nov. 12, 2010) (unpublished) (finding no abuse of discretion by a district court that declined to adjourn sentencing in order to allow the defendant to take advantage of the Fair Sentencing Act of 2010); *United States* v. *Spires*, 628 F.3d 1049, 1055 (8th Cir. 2011) (same); *United States* v. *Bradley*, No. 10-11639, 2011 WL 169228 (11th Cir. Jan. 20, 2011) (per curiam) (unpublished) (same).  By way of contrast, if the Government were to request an adjournment for the explicit purpose of rendering a related state sentence "discharged," thereby preventing the Court from adjusting the defendant's sentence pursuant to U.S.S.G. § 5G1.3(b)—assuming that the related state sentence otherwise qualified for such an adjustment—the defendant would protest and the Court would deny the adjournment request.  This is because of the simple principle that a defendant's sentencing should not be delayed simply so that one or the other party can take legal advantage of such a delay.  That principle applies equally here.

Second, granting such an adjournment would not only delay Arteaga's sentencing unnecessarily, but would also lead to congestion within the judicial system.  A similar issue arose when the Supreme Court issued its opinion in *Blakely* v. *Washington*, 542 U.S. 296 (2004), and granted a writ of *certiorari* in the case that would result in *United States* v. *Booker*, 543 U.S. 220 (2005).  Accordingly, some defendants sought to adjourn their sentencing hearings pending the *Booker* decision, believing—rightly, as it turned out—that the Supreme Court might render the Guidelines advisory.  Judge Keenan explained concisely why he would not grant such adjournments: "Delaying sentencings because of *Blakely* …, and awaiting rulings in *Booker* and *Fanfan*, would cause a tremendous backlog in the criminal calendars of federal courts."  *United States* v. *Ochoa-Suarez*, No. 03 Cr. 747 (JFK), 2005 WL 66889, at *1 (S.D.N.Y. Jan. 11, 2005) (Keenan, J.).  The same is true here, although to an even greater degree, since all parties knew that a decision in *Booker* would be forthcoming within a known period of time, whereas here there is no way of knowing if the SSA will ever become law, and, if it does, when that might occur.  Indeed, there is no certainty that the SSA will ultimately be enacted.  If defendants were permitted to adjourn sentencing hearings in order to avail themselves of potential changes in the law, every defendant would have an incentive to delay sentencing until, at least, he had been in prison for a term equal to her mandatory minimum, as he would never know what change in the law might occur in the future that could inure to his benefit.

Third, the law requires this Court to "impose sentence without unnecessary delay."  Fed. R. Crim. P. 32(b)(1); *see also United States* v. *Ray*, 578 F.3d 184, 199 (2d Cir. 2009) ("The directive set forth in Rule 32, taken together with the general prohibition of 'oppressive delay' established by the Due Process Clause … protects criminal defendants from unreasonable delays between conviction and sentencing." (quoting *United States* v. *Lovasco*, 431 U.S. 783, 789 (1977)).  Here, there has already been one adjournment of Arteaga's sentencing proceeding, and any further delay would be "unnecessary."

Hon. Victor Marrero
February 24, 2014
Page 3 of 4

Fourth, the Guidelines are only advisory, and are not binding. However, the stipulated Guidelines sentencing range of 97 to 121 months' imprisonment suggests a sentence above even the five-year mandatory minimum, and far above the two-year mandatory minimum that Arteaga hopes to obtain. This Guidelines calculation is only one of a number of factors that this Court must consider in sentencing Arteaga. 18 U.S.C. § 3553(a). Accordingly, Arteaga's Guidelines calculation is not dispositive, and the Court may consider other Section 3553(a) factors in deciding whether to vary from Arteaga's stipulated Guidelines range of 97 to 121 months' imprisonment. However, the Government presently expects to ask this Court to impose a sentencing within that Guidelines range.

Fifth, it is unclear whether the SSA, if passed, would even apply to Arteaga. Arteaga's criminal conduct took place before any passage of the SSA could possibly occur. Accordingly, as this Court is well-aware, absent explicit direction or necessary implication otherwise, this Court must sentence Arteaga pursuant to the criminal statutes in place at the time of his offense, that is, prior to the potential passage of the SSA. The draft of the SSA presently before the Senate contains no clause rendering the SSA retroactively applicable. And, although the Supreme Court recently decided that the Fair Sentencing Act of 2010 ("FSA") would apply to defendants sentenced after its passage, irrespective of when they committed their crimes, *see Dorsey* v. *United States*, 132 S. Ct. 2321 (2012), that opinion relied on relatively unique features of the FSA, including the fact that it was intended to reduce certain crack/powder sentencing disparities that are not the subject of the SSA, *id.* at 2333. It is therefore unclear, at best, whether the SSA—if ever enacted—would apply to Arteaga in the first place.

Accordingly, several judges in this District have denied requests similar to that made by Arteaga here. For example, in *United States* v. *Camacho*, the Honorable Katherine B. Forrest, United States District Judge, denied a such a request for an adjournment of sentencing, stating simply: "You can raise any issues at the 2/24 sentencing. The Court intends to proceed on that date. The Guidelines are advisory only and the Court applies 3553(a) to ultimately decide the sentence." *See Camacho*, No. 13 Cr. 58 (KBF) (S.D.N.Y. Feb. 6, 2014) (endorsed letter); *see also United States v. Moye*, 12 Cr. 862 (AJN) (Nathan, J.); *United States v. Melvin*, 10 Cr. 391 (CM) (McMahon, J.).

For the above-state reasons, this Court should deny Arteaga's application and proceed to sentencing on Wednesday, February 28, 2014, as scheduled.

Hon. Victor Marrero
February 24, 2014
Page 4 of 4

    Please feel free to contact me with any questions or issues.

                                                Respectfully submitted,

                                               PREET BHARARA
                                               United States Attorney

                                By:     */s/ Christopher J. DiMase*
                                               Christopher J. DiMase
                                               Timothy T. Howard
                                               Assistant United States Attorneys
                                             Tel.: (212) 637-2433 / 2308

cc:    Joshua L. Dratel, Esq. (by electronic mail)