E5u0arts

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          12 CR 859

5    LUIS ARTEAGA, JR.,

6              Defendant.

7    ------------------------------x

8                                     New York, N.Y.
                                      May 30, 2014
9                                     11:47 A.M.

10

11

     Before:
12
                       HON. VICTOR MARRERO,
13
                                      District Judge
14

15                        APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     TIMOTHY TURNER HOWARD
18   Assistant United States Attorney

19   JOSHUA DRATEL
     Attorney for Defendant
20

21

22

23

24

25
```

E5u0arts

 1  (In open court; defendant present)

 2          THE COURT:  Good morning.  This is the proceeding in

 3  the matter of United States v. Arteaga.  It's docket number 12

 4  CR 0859, scheduled as the sentencing of the defendant in the

 5  matter.

 6          Counsel, please enter your appearances for the record.

 7          MR. HOWARD:  Tim Howard, for the government.

 8          THE COURT:  All right.

 9          MR. DRATEL:  Good morning, your Honor, Joshua Dratel

10  for Mr. Arteaga, seated beside me.

11          THE COURT:  Good morning.  Thank you.

12          I have read and reviewed the presentence investigation

13  report dated January 23, 2014 prepared in connection with

14  today's sentencing of Mr. Arteaga.  I have also read the

15  memorandum from defense counsel dated May 23rd, 2014.

16          Mr. Howard, has the government read and reviewed the

17  presentence report?

18          MR. HOWARD:  Yes, and the government has no objection.

19          THE COURT:  Mr. Dratel, have you read and reviewed the

20  presentence report.

21          MR. DRATEL:  Yes.  It was brought over with Mr.

22  Arteaga and we have no objections, beyond the ones that we have

23  submitted.  I don't think there are any outstanding.

24          THE COURT:  Thank you.

25          Mr. Arteaga, please rise.

3

E5u0arts

1           Have you read and reviewed the presentence report?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Have you discussed it with your attorney?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Thank you, you may be seated.

6           On October 9, 2013, Mr. Arteaga pled guilty before

7    magistrate Judge Gorenstein to count one of the superseding

8    indictment, 12 CR 0859, which charged him under 21 USC Sections

9    841(b)(1)(B) and 846 with conspiracy to distribute and possess

10   with intent to distribute cocaine.

11          The Court reviewed the transcript of the defendant's

12   guilty plea and, by order dated November 8, 2013, accepted the

13   plea as having been entered knowingly and voluntarily and with

14   a factual basis.

15          Mr. Howard, does the government have any additional

16   comments for the Court's consideration?

17          MR. HOWARD:  Yes, your Honor.

18          As a threshold matter regarding the discrepancy in the

19   guidelines range that was calculated by the probation

20   department and on the plea agreement, as Mr. Dratel points out

21   in his submission, the fact that the defendant served 4 months

22   in prison for his state offense did not appear on his rap

23   sheet, and was revealed during the presentence investigation.

24   The government believes that the calculation as set forth by

25   the probation department is correct, that he is in criminal

E5u0arts

1   history category III, offense level 29.

2          That being said, it is now the policy of the

3   Department of Justice that a two-level variance should be

4   granted in light of proposed amendments to the drug quantity

5   tables in the guidelines.  It's the government position that a

6   reasonable sentence would be at criminal history category III,

7   at offense 27, which is the equivalent to 87 to 108 months

8   imprisonment, lower than the stipulated guidelines range of 108

9   to 135 in the plea agreement itself.

10          Just real briefly, we believe a sentence within that

11   range of 87 to 108 months is reasonable for just punishment,

12   respect for the law, and deterrence.  This defendant committed

13   a very serious offense.  After having been convicted of a

14   violent state offense, he then leaves the country while on

15   probation, for the promise of $12,000, to smuggle a significant

16   quantity of a very dangerous controlled substance into the

17   United States.

18          He was not deterred by his prior conviction, or the

19   fact that he was under court supervision at the time to do

20   this.  And for those reasons, we believe that a sentence within

21   the range of 87 to 108 months is appropriate in this case.

22          THE COURT:  All right, thank you.

23          Mr. Dratel, do you have any additional comments for

24   the Court's consideration?

25          MR. DRATEL:  Your Honor, I know the Court has -- we've

5

E5u0arts

1    put in a comprehensive submission, so I know the Court has read

2    that.

3         I just want to touch on some of what I think are the

4    important aspects of it.  And I think, foremost, is Mr.

5    Arteaga's adjustment at MDC, which has really been

6    transformative.  And he has -- and it's a poor environment for

7    this kind of transformation.  Yet, he has done it with his own

8    personal commitment.  His family has been very supportive.  His

9    mother and aunt are here.  I spoke to his girlfriend, who is

10   the mother of his two-year-old daughter this morning.  She was

11   supposed to be here, I don't know, she is obviously delayed.

12   But the point is, his family is very supportive, remains

13   supportive, will be supportive.

14        And this has really been a 180-degree change in his

15   approach and attitude, even since the time that I have begun

16   representing him, going from someone who was resistant in many

17   ways to a lot of what was necessary to resolve the case, to

18   someone who has now affirmatively taken responsibility, not

19   only for his offense but, also, for his life in an ongoing way

20   in the future.

21        I think the ameliorative amendments that Mr. Howard

22   spoke of are important, not only in the context of the two

23   points but, also, what it means the context of sentencing

24   policy in the future.  On the horizon, also, is the Smarter

25   Sentencing Act, which I don't think will be passed this year,

E5u0arts

1    more because of Congress' paralysis and the election year,

2    rather than a considered consensus that it is necessary.

3    Because I think we have polar opposites in terms of political

4    points of view that are both behind this legislation that,

5    unfortunately, will not be able to benefit Mr. Arteaga today.

6    I don't even know retroactively.  But I think it is an

7    important aspect of what the Court ought to be considering in

8    the context of the future down the road, in other words the

9    length of Mr. Arteaga's sentence.

10           I think the disparities are important.  The disparity,

11    not only in this case, but where people in which defendants,

12    co-defendants who are far more culpable in the context of the

13    larger organization and the larger conspiracy have received

14    sentences lower than what Mr. Arteaga is available to receive.

15    In the sense that we're locked into a 60-month mandatory

16    minimum.  Some have received three years, whose organizational

17    capabilities and whose profit and whose responsibility is much

18    greater than Mr. Arteaga's.  I think that is a factor.  I think

19    that we have made the point about his criminal history

20    category, one conviction.  And he knowledges, obviously, that

21    he was on supervision and all of that.  But it does ratchet up

22    his criminal history score in a way that I think overstates it.

23           I think the equities and the numbers, both favor a

24    mandatory minimum sentence here, the 60 months.  And there was

25    an article -- I was on trial for more than a month, just

E5u0arts

1    finished last week.  But I was catching up on newspapers.  I

2    came upon an article, after we had submitted our sentencing

3    memorandum, from the New York Times back in April.  And it

4    reflects something that has also been released in May, which is

5    the Brooking Institution Report for its housing project.  It

6    had some startling numbers that I think go towards, again, the

7    length of the sentence, and the future.  The future for, not

8    only Mr. Arteaga, but his daughter.  In this sense.  In that

9    University of Washington study said that:  Serving time reduced

10   men's hourly road wage by 11 percent, and annual employment by

11   nine weeks.  More than half of inmates have minor children.

12   Their children are almost six times as likely to be expelled or

13   suspended from school.  Family incomes fall 22 percent during

14   the years the fathers are incarcerated.  These are numbers, but

15   there is human beings behind each one of those numbers.  And I

16   think that the 60 months is sufficient for purposes of

17   deterrence, both specific and general.  I think it's sufficient

18   with respect to recidivism, given the kind of change and

19   turn-around that Mr. Arteaga has undergone and continues to

20   undergo.

21           I don't think this is leniency in the sense of

22   60 months.  I think it would be justice.  I think it would be

23   wisdom.  I think it would be recognition of where we're going

24   as a society in the context of punishment and sentencing.

25           Everybody talks about the problem of mass

E5u0arts

incarceration.  And it has to be addressed, I think, defendant

by defendant, lawyer by lawyer, Judge, by judge.  And it's been

recognized by presidents, by the attorney general, by the

Supreme Court justices.  Even Congress, even though it can't

act, it recognizes it in the context of what has been passed

through committees.  It's a challenge to all of us.  And I

think Mr. Arteaga, himself, has begun to meet that challenge

and has accepted it.  And I think that we also need to meet

that challenge in the context of not sentencing people to more

than necessary.

Here, I think the mandatory minimum of 60 months is

sufficient, but not greater than necessary, and is the

appropriate sentence for Mr. Arteaga.

Thank you, your Honor.

THE COURT:  Thank you.

Mr. Arteaga, please rise.

Is there anything you would like to say on your own

behalf before the Court sentences you?

THE DEFENDANT:  Yeah.

I wrote a speech, but I'm a bit nervous.  Not sure

it's going to come out the way I wanted it to.

I stand before the Court today a rehabilitated person.

I have been incarcerated for the last 19 months, and instead of

watching time go by, I used the time to learn the errors of my

ways.  I can stand before this Court and represent that I am no

E5u0arts

1   longer the person that was arrested two years ago.

2           Being young, and not having the guidance growing up, I

3   made decisions that were not in anyone's best interest, other

4   than my own.

5           I have learned to become a born-again Christian, that

6   I have to be accountable for my actions.  And moving forward in

7   life, I will dedicate my heart and mind to raising my beautiful

8   daughter and become an asset to society, instead of a

9   liability.  I apologize to the Court, the government, my

10  family, as well as your Honor, and all unknown victims of my

11  actions.  I know actions speak louder than words, and although

12  I have a lot more I could say, I would rather show your Honor

13  than make statements that are untrue and false.

14          Thank you for considering my thoughts in imposing

15  sentence.

16          THE COURT:  Thank you.

17          MR. DRATEL:  Your Honor, may I add to that, you know,

18  even though we talked about a statement, Mr. Arteaga composed

19  that entirely on his own.

20          THE COURT:  Thank you.

21          In accordance with the decision by the United States

22  Supreme Court in United States v. Booker, while the United

23  States Sentencing Guidelines are not mandatory, the Court

24  nonetheless must consult those guidelines and take them into

25  account when sentencing.  Therefore, the Court has considered

E5u0arts

1    the findings of fact stated in the presentence report, as well

2    as the guidelines analysis and the recommendations contained

3    therein.

4           The Court has weighed its information along with the

5    factors listed in 18 U.S.C. Section 3553(a) in coming to its

6    final sentencing decision in this case.

7           Mr. Howard, I would as you to confirm the government

8    has indicated that it agrees that the offense level should be

9    reduced by the two points.

10          MR. HOWARD:  The government believes that a correct

11   guidelines calculation is at level 29, but that a sentence at

12   the equivalent of level 27 will be appropriate.

13          THE COURT:  Because of the two points prospective

14   credit under the statute contemplated.

15          MR. HOWARD:  Exactly, your Honor.  Yes.

16          THE COURT:  All right.

17          The Court adopts the factual recitation in the

18   presentence investigation report.  Therefore, the Court finds

19   that under the guidelines, Mr. Arteaga's offense level amounts

20   to 29, and his criminal history category falls into

21   category III.  In accordance with the government's

22   representation, the Court will adopt an offense level of 27,

23   giving Mr. Arteaga the two-point adjustment in light of the

24   government's policy on this matter, reflecting the legislation

25   which the government is supporting and which Congress is

E5u0arts

1    contemplating.

2            The recommended range of imprisonment for that offense

3    level and criminal history category is 87 to 108 months.

4            Mr. Arteaga pled guilty to one count of conspiracy to

5    distribute and possess with intent to distribute cocaine.  The

6    probation office has recommended that the Court impose a

7    sentence; of 108 months, based on its computation of 29 offense

8    level and criminal history category III.

9            Subsection (A)(1) of 18 U.S.C. Section 3553 requires

10   that the Court take into consideration the nature and

11   circumstances of the offense, history and characteristics of

12   the defendant.

13           Subsection (A)(2) of 18 U.S.C. Section 3553 requires

14   that the Court consider the need for the sentence to promote

15   certain objectives of the criminal justice system, namely,

16   punishment, specific and general deterrence and rehabilitation

17   pursuant to Section 3553(A)(6).  The Court is also directed to

18   consider the need to avoid unwarranted sentencing disparities

19   among defendants with similar records and similar offenses in

20   other cases, as well as in the case at hand.

21           Mr. Arteaga, please rise.

22           I have taken into account the nature and circumstances

23   of the offense, and the history and characteristics of the

24   defendant.  And considering all of the factors listed in

25   18 U.S.C. Section 3553(A), the Court finds that a sentence of

E5u0arts

1   60 months imprisonment is reasonable and appropriate, in that

2   such a term is sufficient but not greater than necessary to

3   promote the proper objectives of sentencing.

4        In imposing this sentence, I have taken into account

5   the circumstances cited by defense relating to the defendant's

6   post-arrest rehabilitation and acceptance of responsibility.

7        I have also taken into account the sentences the Court

8   has imposed on other defendants in this case with circumstances

9   comparable to that of Mr. Arteaga.  Specifically, the Court

10  sentenced Mr. Posada, whose guidelines range was 87 to

11  108 months, like that of Mr. Arteaga, to 60 months mandatory

12  minimum.

13       Upon release from imprisonment, Mr. Arteaga, you shall

14  be placed on supervised release for a term of three years.

15       I will not impose a fine, because the Court has

16  determined that you do not have the ability to pay such a fine.

17  However, you are ordered to pay to the United States a special

18  assessment of $100, which shall be due immediately.

19       Mr. Howard, is there a forfeiture provision in this

20  case?

21       MR. HOWARD:  Yes, your Honor, but the government is

22  not seeking forfeiture at this time.

23       THE COURT:  Mr. Arteaga, you must comply with standard

24  conditions 1 through 13 of supervised release, and the

25  following mandatory conditions:

E5u0arts

1          You shall not commit another federal, state, or local

2     crime; you shall not illegally possess a controlled substance;

3     you shall not possess a firearm or destructive device.

4          You shall cooperate in the collection of DNA, as

5     directed by the probation officer.

6          The mandatory drug testing condition is suspended due

7     to the imposition of a special condition requiring drug

8     treatment and testing.

9          In addition, you shall obey the following special

10    conditions:

11         You shall participate in a program approved by the

12    United States Probation Office, which may include testing to

13    determine whether you have reverted to using drugs or alcohol.

14         The Court authorizes the release of available drug

15    treatment evaluations to the substance abuse treatment

16    provider, as approved by the probation officer.

17         You will be required to contribute to the costs of

18    services rendered as a co-payment, in an amount determined by

19    the probation officer, based on the ability to pay or the

20    availability third-party payment.

21         You shall submit your person, residence, place of

22    business, vehicle, or any other premises under your control to

23    a search on the basis that the probation officer has reasonable

24    belief that contraband or evidence of the violation of the

25    conditions of release may be found.

E5u0arts

1        The search must be conducted at a reasonable time and

2   in a reasonable manner.  Failure to submit to search may be

3   grounds for revocation.  You shall inform any other residents

4   that the premises may be subject to search pursuant to this

5   condition.

6        You shall provide the probation officer with any

7   requested financial information.  You shall not incur any new

8   credit card charges, or open additional lines of credit,

9   without the approval of the probation officer, unless you are

10  in compliance with the installment payment schedule.

11       Mr. Arteaga, do you understand each of these

12  conditions?

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  You shall report to the nearest probation

15  office within 72 hours of release from custody.

16       The Court recommends that you be supervised by the

17  district of residence.

18       The sentence, as stated, is imposed.

19       Mr. Arteaga, to the extent you have a right to appeal

20  your sentence, and you're unable to pay the costs of an appeal,

21  you have the right to apply for leave to appeal in forma

22  pauperis, meaning as a poor person.

23       If you make such a request, the Clerk of Court must

24  immediately prepare and file a notice of appeal on your behalf.

25       Do you understand your right to appeal, to the extent

E5u0arts

1    that it may exist?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Mr. Howard, are there any remaining counts

4    or underlying indictments that need to be dismissed at this

5    time?

6              MR. HOWARD:  Yes.  At this time, the government would

7    move to dismiss all open underlying counts and indictments.

8              THE COURT:  So ordered.

9              Mr. Dratel, is there anything else you would request?

10             MR. DRATEL:  Yes, your Honor.  If the Court could

11   recommend designation as close to the New York metropolitan

12   area as possible for purposes of keeping Mr. Arteaga close to

13   his family and, also, a recommendation for a drug program as

14   recommended in the presentence report.

15             THE COURT:  The Court will so recommend.

16             MR. DRATEL:  Thank you, your Honor.

17             THE COURT:  If there is nothing else, I thank you,

18   have a good day and a good weekend.

19             MR. DRATEL:  Thank you, your Honor.

20             THE COURT:  You're welcome.

21             (Adjourned)

22

23

24

25